564 S.E.2d 87

The STATE, Respondent,

v.

Frank M. GASTER, Appellant.

No. 25469.

Supreme Court of South Carolina.

Heard Dec. 11, 2001.

Decided May 20, 2002.

548

W. Gaston Fairey, of Fairey, Parise & Mills, P.A., of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General Treva Ashworth, Senior Assistant Attorney General Kenneth P. Woodington, and Assistant Attorney General Steven G. Heckler, all of Columbia, for respondent.

Justice MOORE.

Appellant appeals his commitment pursuant to the South Carolina Sexually Violent Predator Act, S.C.Code Ann. § 44–48–10 to –170 (Supp.2000). We affirm.

## FACTS

Appellant was convicted of second degree criminal sexual conduct (CSC) with a minor and sentenced to twenty years imprisonment in July 1988. In 1999, he was scheduled for release after having satisfied the statutory requirements of his sentence. The State filed an action under the Sexually Violent

Predator Act (the Act), to have appellant designated a sexually violent predator.

Following a trial, the jury found appellant to be a sexually violent predator. He was then committed to the South Carolina Department of Mental Health (DMH) for treatment.[1] Pursuant to S.C.Code Ann. § 44-48-100(A) (Supp.2000), appellant's custody was transferred from DMH to the Department of Corrections.[2]

## ISSUES

(1) Does the Act violate the double jeopardy, *ex post facto*, and due process clauses of the United States and South Carolina constitutions?

(2) Was appellant properly found to be a sexually violent predator?

(3) Did the trial court violate appellant's right to due process by allowing the use of a motion appellant filed that challenged the constitutionality of the age of sexual consent to prove appellant's need for treatment?

### I. Constitutional Questions

■ When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity

---

1. S.C.Code Ann. § 44-48-100(A) (Supp.2000) provides:

    The ... jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If a jury determines that the person is a sexually violent predator, the determination must be by unanimous verdict. If the ... jury determines that the person is a sexually violent predator, the person must be committed to the custody of the Department of Mental Health for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large and has been released pursuant to this chapter.

2. Section 44-48-100(A) provides:

    The [DMH] may enter into an interagency agreement with the Department of Corrections for the control, care, and treatment of these persons. A person who is in the confinement of the Department of Corrections pursuant to an interagency agreement authorized by this chapter must be kept in a secure facility and must, if practical and to the degree possible, be housed and managed separately from offenders in the custody of the Department of Corrections.

appears so clearly as to leave no doubt that it conflicts with the constitution. *State v. Jones*, 344 S.C. 48, 543 S.E.2d 541 (2001).

*Ex post facto challenge*

Article I, § 10, of the United States Constitution and Article I, § 4, of the South Carolina Constitution provide that no *ex post facto* law shall be passed. An *ex post facto* violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime. *Jernigan v. State*, 340 S.C. 256, 531 S.E.2d 507 (2000). For the *ex post facto* clause to be applicable, the statute or the provision in question must be criminal or penal in purpose and nature. *State v. Huiett*, 302 S.C. 169, 394 S.E.2d 486 (1990) (citing *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

We recently held the Act, which provides for the civil commitment of a sexually violent predator to the DMH's custody, is a civil, non-punitive scheme. *See In re Matthews*, 345 S.C. 638, 550 S.E.2d 311 (2001) (Act does not violate Double Jeopardy clause of federal or state constitutions because it does not constitute punishment). Appellant has the burden of providing the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the legislature's intention that the Act be civil. *See In re Matthews*, *supra* (citing *Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001)).

As noted in *In re Matthews*, *supra*, South Carolina's Act is modeled on Kansas's Sexually Violent Predator Act. The United States Supreme Court has previously determined the Kansas Act does not violate the *ex post facto* clause of the United States Constitution. *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). The *Hendricks* Court held the application of the Kansas Act did not raise *ex post facto* concerns because the Kansas Act does not impose punishment. The Court further stated the Kansas Act

clearly does not have retroactive effect. Rather, the Act permits involuntary confinement based upon a determination that the person *currently* both suffers from a "mental abnormality" or "personality disorder" and is likely to pose

a future danger to the public. To the extent that past behavior is taken into account, it is used ... solely for evidentiary purposes. Because the Act does not criminalize conduct legal before its enactment, nor deprive Hendricks of any defense that was available to him at the time of his crimes, the Act does not violate the *Ex Post Facto* Clause.

*Hendricks*, 521 U.S. at 370–371, 117 S.Ct. at 2086, 138 L.Ed.2d at 520–521 (emphasis in original).

Likewise, the South Carolina Act permits involuntary confinement based upon the determination the person currently suffers from both a mental abnormality or personality disorder and is likely to engage in acts of sexual violence. *See* S.C.Code Ann. § 44–48–30(1) (Supp.2000) (sexually violent predator means person who has committed sexually violent offense and who suffers from mental abnormality or personality disorder which makes person likely to engage in sexually violent acts if not confined in secure facility for long-term control, care, and treatment).

■ Appellant argues the Act has crossed the line between civil commitment and punitive confinement. He points to the Act's requirement that all persons committed under the Act be kept "in a secure facility." S.C.Code Ann. § 44–48–100(A). He further points to the DMH's ability to enter into an agreement with the Department of Corrections for the control, care, and treatment of persons committed pursuant to the Act. Appellant argues this suggests that persons confined under the Act are being subjected to conditions identical to those of prisoners.

Appellant's contention has previously been addressed in *In re Matthews, supra.* Matthews argued he was subject to the conditions placed on state prisoners, and that he would not receive treatment for his alleged disease. We stated:

The conditions of confinement are not prescribed by the Act, but result from administrative decisions. Therefore, the conditions of confinement cannot be used to determine legislative intent.... Furthermore, the Act expressly provides, "The involuntary detention or commitment of a person pursuant to this chapter shall conform to constitutional

requirements for care and treatment." S.C.Code Ann. § 44–48–170.

*In re Matthews,* 345 S.C. at 650–651, 550 S.E.2d at 317.

Furthermore, appellant has failed to meet his burden of showing the Act is so punitive in effect as to negate the legislature's intention to create a civil statute. *In re Matthews, supra* (citing *Seling v. Young, supra*). There is no information in the record indicating persons committed pursuant to the Act are being treated as if they were prisoners instead of as civilly committed persons.

We find the United States Supreme Court's decision in *Hendricks* is controlling, and conclude South Carolina's Act does not violate the *ex post facto* clause.

*Double jeopardy challenge*

■ Appellant claims the Act violates the double jeopardy clause of the United States and South Carolina Constitutions. We have previously found the Act does not violate the double jeopardy clause. *In re Matthews, supra.*

*Due process challenge*

■ Appellant's claim the Act violates the due process clause of the United States and South Carolina Constitutions [3] is not preserved for review. This constitutional issue was not raised to or ruled upon by the trial court. *In re McCracken,* 346 S.C. 87, 551 S.E.2d 235 (2001) (it is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required; a constitutional claim must be raised and ruled upon to be preserved for appellate review).

## II.   Sexually violent predator status

At trial, Sheriff Lane Cribb, who arrested appellant for the 1988 charge of second degree CSC with a minor, testified regarding conversations he had with appellant. Sheriff Cribb stated appellant obsessively tried to justify his behavior with his victim by stating he should be allowed to have sexual relations with a fourteen-year-old girl.

---

3. The Fourteenth Amendment of the United States Constitution and Article I, § 3, of the South Carolina Constitution provide that no person shall be deprived of life, liberty, or property without due process of law.

Sheriff Cribb further testified appellant stated he carried out fantasies of rape, kidnapping, and prostitution with his victim as evidenced by the videotapes he made of himself acting out these fantasies with the victim.

Next, Dr. Donna Schwartz Watts (hereinafter referred to as Dr. Watts) testified. She stated she used the following to evaluate appellant: his past indictments; his Department of Corrections's record, which indicated good behavior; a 1973 vocational rehabilitation evaluation; a motion appellant filed for a ruling on the legal age of sexual consent; a transcript from the Georgetown County Sheriff's Office; 1988, 1993, and 1995 psychological evaluations, none of which indicated sexual disorders; psychological tests; a telephone interview with appellant's mother; and a two and a half hour psychiatric exam conducted by Dr. Watts herself.

Dr. Watts stated she discussed with appellant his 1973 conviction for contributing to the delinquency of a minor. Appellant told her the conviction arose because he gave a fifteen-year-old girl a key to his home. The girl did not attend school and remained in his home when she should have been at school. Appellant's Vocational Rehabilitation records indicated he encouraged the girl to not attend school and that they had a sexual relationship.

Dr. Watts and appellant also discussed his 1988 conviction for second degree CSC with a minor. Appellant told her he loved the fourteen-year-old victim and that he viewed the relationship as consensual.[4] He told Dr. Watts he and the victim would act out sexual fantasies with each other and sometimes they would videotape those fantasies. Appellant told Dr. Watts that sometimes the victim knew she was being taped and other times, she did not. These videotaped fantasies included a rape scenario where appellant entered the room wearing a mask and made it appear as if he was raping the victim, and a prostitution scenario where he had the victim act as a prostitute and he pretended to pay her afterwards.

From appellant's relationship history, Dr. Watts learned appellant had two previous marriages, both of which ended in

---

4. However, Dr. Watts testified the Victim Notification Form indicated the victim was upset by the relationship and viewed it as a traumatic experience.

divorce. She further learned that both wives were considerably younger than appellant.[5]

From one of the psychological tests, Dr. Watts was able to determine appellant had some abnormal sexual arousal that he had not mentioned. She stated he suffers from two major mental illnesses: sadism and paraphilia, both of which are sexual disorders.[6] Dr. Watts gave appellant the paraphilia diagnosis because appellant had videotaped his victim without her knowledge. Dr. Watts stated that type of activity was similar to voyeurism. She diagnosed appellant with sadism because he is aroused by producing pain in his sexual partners. Dr. Watts further testified appellant's preference for young girls is significant since it is easier for him to act out his fantasies because the girls are easier to control and more likely "to go along with . . . his fantasies."

By evaluating appellant pursuant to the Act, Dr. Watts concluded to a reasonable degree of medical certainty that appellant suffers from the sexual disorders known as sadism and paraphilia. Dr. Watts stated these disorders do not disappear and, in the case of sadism, get worse over time. She testified there was no outpatient treatment available in South Carolina to treat appellant given those diagnoses.

On re-direct, Dr. Watts testified appellant has a propensity to commit sexually violent acts, and that propensity poses a threat to society if he is not confined, controlled, and given the proper treatment, which would not consist of outpatient treatment. She further indicated there was no guarantee the public would not be in danger if appellant were to submit to outpatient treatment.

Appellant testified he was not interested in adolescent females and did not feel that if he were released from custody he would have a propensity to commit another sexual crime.

---

5. Dr. Watts testified both of his wives were fifteen years old at the time appellant married them. However, appellant testified his first wife was seventeen years old at the time of marriage and his second wife was eighteen years old at the time of marriage.

6. Paraphilia is a category of sexual disorders reserved for behaviors that are not necessarily listed in any of the other sexual disorder categories, in other words, a "grab bag" for all kinds of deviant behavior.

He also stated, after serving eleven years in prison, he could resist any attraction to younger women. Appellant noted that due to his age, he was unsure whether an adolescent female would even be attracted to him. Regarding the videotapes, appellant testified he placed a mask over his face once so the victim could not see him as a way to act out a fantasy, which he indicated was the victim's fantasy and not his own.

The trial court charged the jury that the State must prove beyond a reasonable doubt that appellant suffers from a mental abnormality or a personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. The court further informed the jury of the statutory definition of "likely to engage in acts of sexual violence," which is that the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the healthy and safety of others.

The jury found appellant to be a sexually violent predator in need of treatment in a secure facility. Appellant now claims his motions for a directed verdict and a judgment notwithstanding the verdict (JNOV) were improperly denied.

■■■■ On an appeal from the trial court's denial of a motion for a directed verdict, the appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling. *In re Matthews, supra.* In ruling on a directed verdict motion, the trial court is concerned with the existence of evidence, not its weight. *Id.* Further, a motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict. *Gastineau v. Murphy,* 331 S.C. 565, 503 S.E.2d 712 (1998).

■■■■ S.C.Code Ann. § 44–48–30(1) provides that a sexually violent predator is a person who:

(a) has been convicted of a sexually violent offense; and

(b) suffers from a mental abnormality [7] or personality disorder that makes the person likely to engage in acts of

---

7. " 'Mental abnormality' means a mental condition affecting a person's emotional or volitional capacity that predisposes the person to commit sexually violent offenses." S.C.Code Ann. § 44–48–30(3) (Supp.2000).

sexual violence [8] if not confined in a secure facility for long-term control, care, and treatment.

Appellant's conviction for second degree CSC with a minor is a sexually violent offense as enumerated in S.C.Code Ann. § 44–48–30(2)(e). Therefore, the first prong of the sexually violent predator determination has been met.

Appellant also meets the second prong of the sexually violent predator determination. There is evidence pointing to the fact appellant suffers from a personality disorder and/or mental abnormality that makes him likely to engage in acts of sexual violence. Dr. Watts, after evaluating appellant, found to a reasonable degree of medical certainty that appellant suffers from the sexual disorders of sadism and paraphilia. She further testified that appellant has a propensity to commit sexually violent acts and that propensity poses a threat to society if he is not confined and given the proper treatment.

There was evidence to support the trial court's denial of appellant's directed verdict and JNOV motions. *See In re Matthews, supra.* Further, given the evidence, the jury reasonably concluded appellant was a sexually violent predator. *See Gastineau v. Murphy, supra* (JNOV motion may be granted only if no reasonable jury could have reached challenged verdict).

*III. Right to due process violated by admission of motion*

At trial, Dr. Watts indicated she used appellant's Motion for Ruling on the Legal Age of Sexual Consent in South Carolina (the motion), dated August 15, 1998, as one of the many sources to evaluate appellant. Dr. Watts testified the motion was significant because it indicated appellant's need for and probability of success in treatment. She stated the entire nature of the motion, the fact it was filed, and the complaint within it were significant.

Appellant testified he filed the motion in an attempt to have the proper age of consent in South Carolina clarified, and not because he was intending to pursue minors. According to

---

8. " 'Likely to engage in acts of sexual violence' means the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." S.C.Code Ann. § 44–48–30(9) (Supp.2000).

appellant, the law since 1895 under the South Carolina Constitution empowers young women to consent at age fourteen. In the motion, appellant stated he did "not want to be arrested or harassed by the police if a woman 14 years of age or older chooses him as a sexual partner." Appellant testified he made that statement in an effort to show he had standing to bring the suit.

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000); *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998).

The trial court properly admitted the motion within its discretion. The motion was relevant because Dr. Watts used the motion in evaluating appellant's need for and probability of success in treatment, facts relevant to determining appellant's need for commitment. *See* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Further, the possibility of unfair prejudice did not substantially outweigh the probative value of the motion. Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ."). As for its probative value, Dr. Watts felt the motion was significant in her evaluation because it indicated appellant's need for and probability of success in treatment. Regarding possible prejudice to appellant, the motion was not the only source Dr. Watts used to evaluate appellant. Dr. Watts used many sources besides the motion to find that appellant suffered from the sexual disorders of sadism and paraphilia.

Because the motion was relevant and its probative value outweighed any prejudicial effect on appellant, the trial court properly admitted the motion within its discretion. *See State*

558

*v. McDonald, supra; Strother v. Lexington County Recreation Comm'n, supra.*

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.