706 S.E.2d 324

The STATE, Appellant,

v.

Gregory Leon WRIGHT, Ernest Anderson, Elijah Carroll, Orlando Coulette, Reco Ham, Jennifer Lyles, and Booker T. Washington, Respondents.

No. 26931.

Supreme Court of South Carolina.

Heard Nov. 17, 2010.
Decided Feb. 22, 2011.
Rehearing Denied March 16, 2011.

438

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Deborah R.J. Shupe, all of Columbia, for Appellant.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, of Columbia; Deborah J. Butcher, of Camden; Harry Leslie Devoe, Jr., of New Zion; and Steven Smith McKenzie, of Coffey, Chandler & Kent, of Manning, for Respondents.

Chief Justice TOAL.

In June 2007, a Clarendon County Grand Jury indicted Respondents on several counts related to dogfighting. This matter was called for trial on July 14, 2008. The circuit court

granted Respondents' motion to suppress certain evidence, and the State timely appealed the circuit court's ruling. This Court certified this case for review pursuant to Rule 204(b), SCACR.

### FACTS/PROCEDURAL BACKGROUND

On November 26, 2006, the Clarendon County Sheriff's Office received an anonymous tip about dogfighting at a mobile home off Jackson Road in Clarendon County. Respondents Orlando Coulette (Coulette) and Jennifer Lyles (Lyles) lived in the mobile home. This tip was received around 7:00 p.m. when the officers were just about to change shifts. Because the tip came in around shift change, the deputies were instructed to stay over and wait at a church approximately two miles from the mobile home in case they were needed. Two deputies then drove past the Jackson Road address on a public road and observed a large number of vehicles parked at the mobile home and spotlights shining in an area next to the mobile home.

Approximately forty-five minutes to an hour after receiving the anonymous tip, law enforcement gathered at the church, paired up in several cars, and drove to the address to investigate further. The mobile home was located down a dirt road shared by at least one other mobile home.[1] The deputies initially had their car headlights off as they drove down the shared road. When the deputies turned their headlights on, they saw people and dogs running away from the mobile home. Sergeant Clay Conyers testified that as he got out of his car to chase the people and the dogs, he could hear dogs fighting in the woods behind the mobile home. Two deputies testified that while they were driving down the dirt road they saw a portable dogfighting pit in the area with the spotlights. Corporal Bernie Thorton testified that as the deputies arrived, people were trying to dismantle the dogfighting pit.

The deputies apprehended and detained the people who ran away, and captured as many loose dogs as possible. Sergeant Dan Cutler (Sergeant Cutler) was the investigations supervisor called to the Jackson Road location after the deputies found evidence of dogfighting there. After Sergeant Cutler

---

1. It appears from the Record that the dirt road is a private road.

observed the dogfighting pit with fresh blood and hair on the panels, and a dog with fresh lacerations, he advised the deputies to place the Respondents under arrest for dogfighting. While securing the scene, deputies saw in plain view dogfighting paraphernalia, including a dogfighting pit, dog muzzles, drugs, syringes, several injured dogs, and a dog suspension collar. Deputies obtained a search warrant the next day and seized additional evidence from the yard and from inside the mobile home. The probable cause for the search warrant was premised on the evidence seized the previous night.

Prior to trial, Coulette and Lyles moved to suppress all evidence seized on the property on the ground that law enforcement did not have a warrant and there was not an emergency such that the deputies could come onto the property. The other Respondents joined the motion to suppress, contending their seizures and subsequent arrests were premised on their presence at the scene and the illegally seized evidence. The State argued Respondents had no expectation of privacy in the driveway and the visible front of the residence. Moreover, the fleeing people and dogs created exigent circumstances that justified the warrantless entry onto the property. The State further asserted the evidence seized without a warrant was in plain view, and the arrests were based on that evidence.

After hearing testimony, the circuit court granted Respondents' motion to suppress, finding the exigent circumstances exception did not apply, and the plain view exception was precluded because discovery of the evidence was not inadvertent. Because the search warrant for the mobile home was obtained based on the evidence seized without a warrant, the court suppressed all of the State's evidence, precluding further prosecution of the State's case.

## Issue

Did the circuit court err in granting Respondents' motion to suppress because the evidence at issue was properly seized under the plain view and exigent circumstances exceptions to the warrant requirement, and inadvertent discovery is not required for purposes of the plain view exception to the warrant requirement?

442

## STANDARD OF REVIEW

■■■■ "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster,* 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) (citations omitted). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000) (citation omitted). When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling. *State v. Missouri,* 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004) (citation omitted). "The appellate court will reverse only when there is clear error." *Id.* (citation omitted).

## ANALYSIS

The State contends the circuit court erred as a matter of law in granting Respondents' motion to suppress because the evidence at issue was properly seized under the plain view and exigent circumstances exceptions to the warrant requirement. The State further contends that inadvertent discovery is not required for purposes of the plain view exception to the Fourth Amendment warrant requirement. We agree.

■■■■■ The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) (citation omitted). Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (citations omitted). Recognized exceptions to the warrant requirement include plain view and exigent circumstances. *See State v. Beckham,* 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999) (recognizing the plain view doctrine as an exception to the warrant requirement); *State v. Brown,* 289 S.C. 581, 587, 347 S.E.2d 882, 886 (1986) (recognizing the exigent circumstances doctrine as an exception to the warrant requirement).

## I. Plain View

■■■■ "Under the 'plain view' exception to the warrant requirement, objects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence." *Beckham,* 334 S.C. at 317, 513 S.E.2d at 613. Consistent with federal law prior to 1990, South Carolina case law regarding the plain view exception requires: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *Beckham,* 334 S.C. at 317, 513 S.E.2d at 613 (citation omitted). However, in *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court (USSC) discarded the inadvertent discovery requirement for the plain view exception. In doing so, the USSC noted, "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton,* 496 U.S. at 138, 110 S.Ct. at 2308–09. Moreover, "[t]he fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." *Id.* at 138, 110 S.Ct. at 2309. We take this opportunity to join with the majority of states and adopt *Horton,* thereby discarding the inadvertence requirement of the plain view doctrine. Hence, the two elements needed to satisfy the plain view exception are: (1) the initial intrusion which afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities.

### A. Initial Intrusion Was Lawful

The State argues that the deputies' observations from the public highway and the dirt road, the anonymous tip, and the exigent circumstances that developed after the deputies entered the shared dirt road justified the initial intrusion onto the property surrounding Coulette's residence to capture flee-

ing suspects and dogs, ensure public safety, and prevent further destruction of evidence. We agree.[2]

### 1. Investigative Authority and Exigent Circumstances

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. U.S.*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (citations omitted). "A policeman may lawfully go to a person's home to interview him.... In doing so, he obviously can go up to the door...." *U.S. v. Daoust*, 916 F.2d 757, 758 (1st Cir.1990) (citations omitted). "A police officer without a warrant is privileged to enter private property to investigate a complaint or a report of an ongoing crime." 24 C.J.S. *Criminal Law* § 2404 (2006); *see also Clark v. City of Montgomery*, 497 So.2d 1140, 1142 (Ala.Crim.App.1986).

"A warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling." *State v. Herring*, 387 S.C. 201, 210, 692 S.E.2d 490, 495 (2009) (*citing Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990)). "In such circumstances, a protective sweep of the premises may be permitted." *Id.* (citing *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990); *State v. Abdullah*, 357 S.C. 344, 351, 592 S.E.2d 344, 348 (Ct.App. 2004)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren v. U.S.*, 517 U.S. 806, 814, 116 S.Ct. 1769, 1775, 135 L.Ed.2d 89 (1996) (citations omitted) (emphasis in original). In the Fourth Amendment context, a court is concerned with determining whether a reasonable officer would be moved to take action. *See id.* at 815, 116 S.Ct. at 1775.

---

**2.** At trial, the State conceded that the anonymous tip alone would not have created probable cause to search. The State contends that the circuit court erroneously interpreted this concession to mean there was no probable cause at the time the deputies entered Coulette's property. We agree. The State argued throughout the motion hearing that the search and seizure was supported by the exigent circumstances and plain view doctrines.

 In this case, the deputies responded to an anonymous tip by first driving by the residence on a public road. From this road, deputies observed a large number of vehicles at the mobile home and saw spotlights shining next to the mobile home. These observations were not subject to any Fourth Amendment protection because they were knowingly exposed to the public. Moreover, these observations would give a reasonable police officer in the deputies' position cause to go forward. However, even absent these observations, the police had the investigative authority to approach the front door of the mobile home in order to investigate the anonymous tip. Respondent Coulette's defense counsel admitted that the police may lawfully knock on the door after receiving a complaint. If the deputies could properly drive up the dirt driveway to get to the front door, then their observations of the dogfighting pit and fleeing people and dogs did not exceed their investigative authority.

The deputies' observations as they drove down the dirt road corroborated the anonymous tip and gave them ample reason to believe dogfighting was in progress. Exigent circumstances developed when the suspects started fleeing. Moreover, the presence of dogs created a potential danger to the deputies. Hence, the deputies had the authority to perform a protective sweep of the premises.

The initial intrusion by the deputies onto Coulette's property was lawful, both because the deputies had the investigative authority to enter the property, pursuant to the anonymous tip and observation from a public road, and because exigent circumstances developed after entering the private driveway. Therefore, we find that the State has satisfied the first element of the plain view exception to the warrant requirement.

### B. Incriminating Nature of Evidence Was Immediately Apparent

 The State argues that the incriminating nature of the evidence they saw in plain view was immediately apparent. We agree.

While securing the scene, deputies saw in plain view dogfighting paraphernalia, including the dogfighting pit, dog muz-

zles, drugs, syringes, several injured dogs, and a dog suspension collar. The incriminating nature of this evidence was immediately apparent considering the deputies were there to investigate a tip concerning dogfighting.

## CONCLUSION

As noted above, the better approach to the plain view doctrine is to discard the inadvertent discovery requirement as the United States Supreme Court did in *Horton*. Thus, the two elements necessary for the plain view doctrine are: (1) the initial intrusion which afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities. In this case, the initial intrusion by the deputies was lawful and the incriminating nature of the evidence was immediately apparent, hence, the suppression of the evidence by the circuit court is reversed.

KITTREDGE and HEARN, JJ., concur.

Acting Justice HOWARD P. KING concurring in part and dissenting in part in a separate opinion in which PLEICONES, J., concurs.

Acting Justice KING.

Respectfully, I concur in part and dissent in part. I agree with the majority that the inadvertent discovery requirement is no longer realistic, and that we should join the majority of states in discarding this requirement. However, I disagree that this Court may then decide the remaining two requirements of the plain view doctrine according to its own view of the facts. For that reason, I would remand the case for the trial court to make those determinations.

In criminal cases, the appellate court sits to review errors of law only. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) (citations omitted). The admission of evidence is within the discretion of the trial court and will not be reversed unless it is based upon an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). Here, the trial court granted the defendants' motion to suppress based upon an error of law—its conclusion that the State must prove the

discovery was inadvertent.[3] The trial court did not make specific findings regarding the remaining requirements of the plain view doctrine: (1) whether the initial intrusion which afforded the authorities the plain view was lawful, and (2) whether the incriminating nature of the evidence was immediately apparent to the seizing authorities. *See State v. Beckham*, 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999) (outlining the requirements of the plain view doctrine). Therefore, in my view, the proper result would be to adopt the appropriate standard as established in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and remand the case to allow the trial court to make the factual determinations regarding the remaining two elements.

PLEICONES, J., concurs.

---

3. Certainly, the trial judge could not foresee a change in the law, and he correctly relied upon the existing law when he made his ruling.