772 S.E.2d 537

The STATE, Appellant,

v.

Walter M. BASH, Respondent.

Appellate Case No. 2013–001430.
No. 5314.

Court of Appeals of South Carolina.

Heard March 3, 2015.
Decided April 22, 2015.
Rehearing Denied June 24, 2015.

422

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor Scarlett A. Wilson, of Charleston, for appellant.

Appellate Defender Susan Barber Hackett, of Columbia, for respondent.

KONDUROS, J.

The State appeals the circuit court's decision granting Walter M. Bash's motion to suppress drug evidence relating to charges against him for trafficking in cocaine greater than 400 grams and trafficking in cocaine base. We reverse and remand.

**FACTS/PROCEDURAL BACKGROUND**

Officers in the Berkeley County Sheriff's Office received an anonymous tip that drug activity was occurring in the backyard of a particular home on Nelson Ferry Road in Moncks Corner. Narcotics officer Sergeant Lee Holbrook and his partner, Sergeant Kimberly Milks, were in the area and decided to go to the location. According to the officers' testimonies at the suppression hearing, they went to the property to speak with the owner and investigate the tip. Sergeant Milks testified she radioed to other officers in the area that she and Sergeant Holbrook were going to the location. She also testified she and Sergeant Holbrook put on their hats and vests marked "Sheriff" prior to approaching the scene.

Sergeant Holbrook testified he and Sergeant Milks drove to the property and observed the home was surrounded by a chain link fence.[1] They turned onto Shine Bash Road, a public

---

1. Photographic exhibits depict the front gate being chained and padlocked. However, the photographs provided were taken approximately two years after the subject incident. Neither party was able to confirm

road beside the house that provided a view into the backyard. Sergeant Holbrook testified they observed several people along with an old shed in a grassy area immediately outside the fence. A black truck, owned by Bash, was parked there as well.

Sergeant Holbrook pulled his vehicle, an unmarked brown Ford Expedition, off the road into the grassy area behind Bash's truck. As he and Sergeant Milks exited their vehicle, he observed one of the men drop a baggie containing a white powdery substance. He testified another man exited the passenger side of Bash's truck and fled toward the adjacent wooded area. That individual was chased by the other officers present while Sergeant Holbrook remained at the scene with the other individuals. Bash exited the driver's side of his truck, and Sergeant Holbrook asked him to step to the tailgate area of the vehicle where the others were gathered. Sergeant Holbrook stated that upon the return of the other officers, law enforcement proceeded to arrest the man observed dropping the powdery substance. Sergeant Holbrook testified he looked in the window of Bash's truck to ensure no other occupants were hiding. When he looked through the window, he saw scales of the type typically used in weighing drugs and a large plastic baggie containing a white powdery substance.

■ At trial, Bash moved to suppress the drug evidence found in his vehicle, arguing officers entered and searched the curtilage of the property without a warrant and without meeting any of the exceptions to the warrant requirement. The State contended the grassy area outside the fence was not within the curtilage of the property but was an open field, thereby falling without the protection of the Fourth Amendment. The State further argued even if the grassy area beyond the fence was within the curtilage of the property, police had the right to enter to conduct a "knock and talk"[2] and their further actions were justified once they observed

at oral argument if the gate was locked at the time of police entry onto the property.

2. "A knock and talk ... is a procedure used by police officers to investigate a complaint where there is no probable cause for a search warrant. The police officers knock on the door, try to make contact with persons inside, and talk to them about the subject of the com-

one of the men drop what appeared to be drugs and another fled the scene.

The circuit court granted Bash's motion to suppress the drug evidence seized from his truck. The circuit court concluded "the tip was not enough to roll up in the backyard solely to search for drugs. And there's no reasonable interpretation of the officers' testimony other than that's why they were there." This appeal followed.[3]

## STANDARD OF REVIEW

"In criminal cases, appellate courts sit to review errors of law only, and are therefore bound by the trial court's factual findings unless clearly erroneous." *State v. Robinson*, 410 S.C. 519, 526, 765 S.E.2d 564, 568 (2014). "Because the admission of evidence is within the sound discretion of the trial court, appellate courts should not reverse the decision of the trial court absent an abuse of discretion." *Id.* "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Hawes*, 411 S.C. 188, 191, 767 S.E.2d 707, 708 (2015) (internal quotation marks omitted). "On appeals from a motion to suppress based on Fourth Amendment grounds, [an appellate court] applies a deferential standard of review and will reverse if there is clear error." *State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014) (internal quotation marks omitted). "However, [an appellate court] reviews questions of law de novo." *Id.*

## LAW/ANALYSIS

The State contends the circuit court erred in finding the police conduct in this case violated the Fourth Amendment prohibition against unreasonable searches and seizures and suppressing the drug evidence against Bash.[4] We agree.

---

plaints." *State v. Dorsey*, 234 W.Va. 15, 762 S.E.2d 584, 588 n. 6 (2014) (alteration by court) (internal quotation marks omitted).

3. The issue of whether Bash had an expectation of privacy on someone else's property was briefly raised to the circuit court but was never fully developed and was never ruled upon by the circuit court. The issue is not raised on appeal.

4. After reviewing the record, it is unclear whether the circuit court ruled on whether the grassy area at issue was part of the curtilage of

426

 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all contact between police and citizens, but is designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *State v. Corley*, 383 S.C. 232, 240, 679 S.E.2d 187, 191 (Ct.App.2009) (internal quotation marks omitted), *aff'd as modified*, 392 S.C. 125, 708 S.E.2d 217 (2011). "We should construe the Fourth Amendment in a manner which will conserve public interests as well as the interests and rights of individual citizens." *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 194 (4th Cir.2015) (alteration omitted) (internal quotation marks omitted).

 "A policeman may lawfully go to a person's home to interview him. . . . In doing so, he obviously can go up to the door. . . . A police officer without a warrant is privileged to enter private property to investigate a complaint or a report of

the subject property. While such a finding was arguably implicit in its ultimate decision, the circuit court indicated "[t]his isn't an open field's question." Additionally, the circuit court failed to address any of the *Dunn* factors used in a curtilage analysis. *U.S. v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) ("[C]urtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."). Finally, the circuit court cited to a non-curtilage Fourth Amendment case, *State v. Taylor*, in ultimately suppressing the drug evidence against Bash. 401 S.C. 104, 106–13, 736 S.E.2d 663, 664–67 (2013) (finding an investigatory stop and frisk of a defendant riding a bicycle on a public road based on an anonymous tip and police observations did not violate the Fourth Amendment). Because we conclude the conduct of police in this case did not violate the Fourth Amendment even if the grassy area was part of the curtilage, we decline to address the curtilage issue. *See Spartanburg Cnty. Dep't of Soc. Servs. v. Little*, 309 S.C. 122, 126, 420 S.E.2d 499, 502 (1992) (declining to address the appellant's additional reasons for reversal when the first issue compelled reversal and was dispositive of the appeal); *Ringer v. Graham*, 286 S.C. 14, 20, 331 S.E.2d 373, 377 (Ct.App.1985) ("Because a new trial is granted, discussion of the other issues raised by the [appellants] is unnecessary."). Our remaining analysis assumes arguendo that police entered the curtilage of the property.

an ongoing crime." *State v. Wright,* 391 S.C. 436, 444, 706 S.E.2d 324, 328 (2011) (alterations by court) (citation and internal quotation marks omitted).

In *Wright,* police received an anonymous tip dogfighting was occurring at a particular location. *Id.* at 440, 706 S.E.2d at 325. Because the tip came in close to time for a shift change, officers were instructed to stay and congregate in a church parking lot near the subject property. *Id.* Two deputies drove past the location and observed lights shining next to a mobile home located at the address as well as a number of vehicles. *Id.* Law enforcement then paired up in several cars and drove to the address to investigate further. *Id.* at 440, 706 S.E.2d at 326. The deputies initially had their car headlights off as they drove down the private road toward the mobile home. *Id.* When deputies turned their lights on, they saw people and dogs running away from the mobile home, a portable dogfighting ring, and other indicia of dogfighting. *Id.* at 440–41, 706 S.E.2d at 326.

In finding the initial entrance of the officers onto the property did not violate the Fourth Amendment, the Supreme Court of South Carolina stated:

> [T]he deputies responded to an anonymous tip by first driving by the residence on a public road. From this road, deputies observed a large number of vehicles at the mobile home and saw spotlights shining next to the mobile home. These observations were not subject to any Fourth Amendment protection because they were knowingly exposed to the public. Moreover, these observations would give a reasonable police officer in the deputies' position cause to go forward. *However, even absent these observations, the police had the investigative authority to approach the front door of the mobile home in order to investigate the anonymous tip....* If the deputies could properly drive up the dirt driveway to get to the front door, then their observations of the dogfighting pit and fleeing people and dogs did not exceed their investigative authority.

*Id.* at 445, 706 S.E.2d at 328 (emphasis added).

In the present case, officers' observations of several individuals in the backyard at the subject property corroborated the anonymous tip. This is less corroboration than the lights and

cars observed in *Wright.* Nevertheless, *Wright* indicates police had investigatory authority to enter the property, even in the absence of corroboration, and go to the front door to investigate the tip.

■ Here, police did not approach the front door but instead drove into the grassy area behind the residence where they had observed the individuals. While no South Carolina cases have addressed this point, the Fourth Circuit has adopted the position police may bypass the front door of a residence and proceed to the backyard or other entrance for a knock and talk provided they have reason to believe the person they are attempting to contact will be found there.

■ "The textual touchstone of the Fourth Amendment is reasonableness." *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 358 (4th Cir.1998) (internal quotation marks omitted). "When applying this basic principle, the [United States] Supreme Court has consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Id.* (internal quotation marks omitted).

■ "In line with this reasonableness approach, [the Fourth C]ircuit has permitted law enforcement officers to enter a person's backyard without a warrant when they have a legitimate law enforcement purpose for doing so." *Id.* An agent does not exceed "the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door." *Id.* (internal quotation marks omitted). Furthermore, an officer may "bypass the front door (or another entry point usually used by visitors) when circumstances reasonably indicate that the officer might find the homeowner elsewhere on the property." *Covey,* 777 F.3d at 193.[5]

In *Alvarez,* police received a complaint of underage drinking at a party. 147 F.3d at 356. Officer Romack approached the front door of the residence to make contact with the homeowner, but, before knocking, another officer noticed a sign

---

**5.** "Other circuits likewise have found that the Fourth Amendment does not invariably forbid an officer's warrantless entry into the area surrounding a residential dwelling even when the officer has not first knocked at the front door." *Alvarez,* 147 F.3d at 358.

indicating the party was in the back of the house. *Id.* at 356–57. The officers proceeded to the backyard, where Officer Romack asked to speak with the host and encountered an underage drinker whom he asked for identification. *Id.* at 357. In determining whether the warrantless entry into the backyard violated the Fourth Amendment, the Fourth Circuit stated:

The officers' entry into the backyard satisfied the Fourth Amendment's reasonableness requirement. They were responding to a 911 call about an underage drinking party and, based on the alcohol containers and the awkwardly parked cars, believed they had found the party. They entered the Alvarezes' property simply to notify the homeowner or the party's host about the complaint and to ask that no one drive while intoxicated. Thus, like the agents in *Bradshaw*[6], the officers in this case had a legitimate reason for entering the Alvarezes' property unconnected with a search of such premises.... In furtherance of this purpose, they obviously could approach the front door in an attempt to contact the Alvarezes. And in light of the sign reading "Party In Back" with an arrow pointing toward the backyard, it surely was reasonable for the officers to proceed there directly as part of their effort to speak with the party's host.

6. In *U.S. v. Bradshaw*, law enforcement officers entered defendant's property to ask him about an abandoned car near his property. 490 F.2d 1097, 1100 (4th Cir.1974). After knocking on the front door of the residence and receiving no response, one officer proceeded to the rear of the residence to knock on a back door. *Id.* at 1099. While en route, the officer noticed Bradshaw's truck exuded a strong odor of moonshine. *Id.* He peered through a crack in the closed, rear, swinging doors of the truck and saw multiple gallon jugs containing a white liquid which was in fact moonshine. *Id.* at 1099–100. The court stated: "[T]he agents had a legitimate reason for this incursion unconnected with a search of such premises directed against the accused. They were clearly entitled to go onto defendant's premises in order to question him concerning the abandoned vehicle near his property. Furthermore, we cannot say that [the officer] exceeded the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door." *Id.* at 1100 (footnote omitted). Nevertheless, the court ultimately suppressed because the moonshine was not in the officer's plain view and the warrantless search of the truck was not necessitated by any other circumstances. *Id.* at 1101–04.

*Id.* at 358–59 (second alteration by the court) (citations and internal quotation marks omitted).

In this case, Sergeant Holbrook and Sergeant Milks testified they saw several individuals in the backyard as they arrived at the property. That observation provided a reasonable basis for believing they would find the homeowner in the backyard. Therefore, we conclude entering the grassy area behind the house to investigate the anonymous tip did not violate the Fourth Amendment.

 Finally, the circuit court concluded the officers' stated intent of going to the property simply to talk to the homeowner was implausible and therefore police entry onto the property violated the Fourth Amendment as a warrantless search.[7] However, the Supreme Court of South Carolina has recognized "[t]he Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Wright,* 391 S.C. at 444, 706 S.E.2d at 328 (internal quotation marks omitted). "Moreover, a police officer's subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *State v. Vinson,* 400 S.C. 347, 352, 734 S.E.2d 182, 184 (Ct.App.2012) (internal quotation marks omitted). " '[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.' " *Wright,* 391 S.C. at 443, 706 S.E.2d at 327 (quoting *Horton v. California,* 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). "An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action." *State v. Herring,* 387 S.C. 201, 210, 692 S.E.2d 490, 494 (2009) (alteration by court) (internal quotation marks omitted).

We conclude the circuit court's injection of the officers'

---

7. We recognize findings of credibility are generally left to the circuit court. *See Gowdy v. Gibson,* 381 S.C. 225, 233, 672 S.E.2d 794, 798 (Ct.App.2008) (acknowledging while this court is not bound by credibility determinations, "we generally defer to the findings of the trial judge in that regard") *aff'd* 391 S.C. 374, 706 S.E.2d 495 (2011).

subjective intent into its analysis was an error of law.[8] While the circuit court may have found the officers' underlying intent was to search the premises, that intent is not impermissible provided the officers had a reasonably objective basis for their actual conduct. Sergeant Holbrook and Sergeant Milks testified they entered the grassy area because they saw several individuals there, they exited their vehicles, and they began to speak to the individuals based on an anonymous tip.[9] Therefore, we are compelled to reverse the circuit court's finding the initial police entry onto the property violated the Fourth Amendment.[10]

The circuit court did not reach the issues of whether the discovery of drug evidence in Bash's truck violated the Fourth Amendment (1) because no exigent circumstances existed or (2) because it was not in plain view. However, because the

---

8. We share the learned circuit court's apparent concern regarding the lack of specificity as to the source and manner of conveyance of the anonymous tip in this case. Additionally, we recognize the use of the knock and talk procedure is sometimes pretextual. Nevertheless, we confine our review to the relevant case law and specific facts in the record before us.

9. The record is unclear as to how many officers were ultimately on the scene, when those officers arrived, or where they were located when Sergeant Holbrook and Sergeant Milks parked in the grassy area. Sergeant Holbrook testified "quite a few" officers chased after the fleeing individual and Sergeant Milks testified they "let the other agents" know on the radio they were going to investigate this tip. Notably, in *Wright*, the opinion indicates that after receiving an anonymous tip, "law enforcement gathered at [a nearby] church, paired up in several cars, and drove to the address to investigate further." 391 S.C. at 440, 706 S.E.2d at 326. This suggests the number of officers involved is not dispositive of whether police contact is a knock and talk or a de facto search. Additionally, Sergeant Milks testified the officers put on their vests and hats indicating they were part of the Sheriff's Office. The circuit court found this conduct to be "suiting up" and that it undercut the nature of this encounter as a knock and talk. However, it is a more open policy for officers to identify themselves during such an investigatory encounter, and it is not unreasonable for officers to consider their own safety in such circumstances.

10. Had officers entered the grassy area and demanded to search the individuals or their vehicles, it would have exceeded the parameters of a knock and talk type encounter. Likewise, had the individuals asked the officers to leave, any continuing police presence on the property would have gone beyond the scope of a knock and talk.

suppression of the evidence could still be upheld based on these points, we will address them. *See Solanki v. Wal–Mart Store No. 2806,* 410 S.C. 229, 235, 763 S.E.2d 615, 618 (Ct.App. 2014) ("According to Rule 220(c), SCACR, an appellate court may affirm the lower court's judgment for any reason appearing in the record on appeal.").

"A warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling. In such circumstances, a protective sweep of the premises may be permitted." *Herring,* 387 S.C. at 210, 692 S.E.2d at 495 (citation omitted). The plain view doctrine justifies seizure of evidence when the seizing officer is lawfully present at the place from which the evidence can be plainly viewed and the evidence's incriminating character is immediately apparent. *Wright,* 391 S.C. at 443, 706 S.E.2d at 327.

Once in the backyard, Sergeant Holbrook observed an individual drop a baggie containing a white powdery substance. Next, the officers observed another individual jump out of Bash's truck and flee the scene. The person did not simply leave or request to go but ran toward a wooded area. These occurrences, coupled with the anonymous tip, gave officers probable cause to believe criminal activity was ongoing and the individuals might flee or otherwise attempt to evade law enforcement. According to Sergeant Holbrook's testimony, in securing the scene, he looked inside the window of Bash's truck and observed drug weighing scales and cocaine. The photographic exhibits in the record support this testimony. Additionally, the incriminating nature of the evidence was readily apparent to an experienced narcotics officer like Sergeant Holbrook. Because we have concluded Sergeant Holbrook was in a place he was lawfully permitted to be, the incriminating evidence was in plain view, and its criminal nature was readily apparent, we conclude its seizure did not violate the Fourth Amendment.

## CONCLUSION

Assuming arguendo, police entered the curtilage of the property at issue, we conclude that conduct did not violate the Fourth Amendment prohibition against unreasonable searches

and seizures. Police were permitted to enter the property to investigate an anonymous tip and had reason to believe they would locate the owner in the grassy area at the rear of the property. Even if the officers hoped to find evidence of drug activity upon entry, that subjective intent does not convert the police conduct in this case into a Fourth Amendment violation. Once at the scene, the actions of the individuals present gave officers probable cause to believe criminal activity was ongoing and that the suspects might flee or otherwise try to avoid police action. Sergeant Holbrook's looking into Bash's truck window was permissible as part of a protective sweep of the area, and the drug evidence was in plain view and readily identifiable as contraband. Consequently, we reverse the circuit court's grant of Bash's motion to suppress and remand this matter to the circuit court for trial.

**REVERSED AND REMANDED.**

THOMAS and GEATHERS, JJ., concur.