# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Donald Marquice Anderson, Petitioner.

Appellate Case No. 2014-001968

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenville County
The Honorable G. Edward Welmaker, Circuit Court
Judge

---

Opinion No. 27609
Heard October 7, 2015 – Filed March 2, 2016

---

## REVERSED

---

Carmen V. Ganjehsani, of Richardson, Plowden & Robinson, PA, and Appellate Defender Laura Ruth Baer, both of Columbia, for Petitioner.

Attorney General Alan M. Wilson, Assistant Attorney General Mary W. Leddon, and Assistant Attorney General Susannah Rawl Cole, all of Columbia, and W. Walter Wilkins, III, of Greenville, all for Respondent.

---

**JUSTICE HEARN:** Donald Marquice Anderson was walking in the vicinity of a drug raid when police officers located in the periphery of the search ordered him to the ground. Upon searching him, officers found crack cocaine, and Anderson was thereafter indicted for possession with intent to distribute crack cocaine. He moved to suppress the drugs, arguing the detention and subsequent pat-down were unlawful under the Fourth Amendment. The trial court denied his motion to suppress and, following a bench trial, found Anderson guilty as charged. The court of appeals affirmed in an unpublished opinion, finding the police had both reasonable suspicion to detain him and reasonable belief he was armed and dangerous to justify the pat-down. *State v. Anderson*, Op. No. 2014-UP-282 (S.C. Ct. App. filed July 9, 2014). We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Detective Keith Cothran of the Greenville Police Department obtained a no-knock search warrant for a house on Dobbs Street (the Dobbs house). The warrant was founded on surveillance and observations by officers of drug activity in the home and in the surrounding area, including a successful purchase of crack cocaine by a confidential informant. During surveillance, officers learned that runners used a footpath to ferry drugs from the Dobbs house to interested buyers on Sullivan Street. Nevertheless, the search warrant included only the Dobbs house and its curtilage; the warrant did not include the footpath.

As a part of the effort in executing the search warrant, Detective Cothran instructed officers in the vice and narcotics unit of the Greenville SWAT team, including Detectives Kevin Hyatt and Gary Rhinehart, to secure and detain any person found on the footpath because the police department knew the footpath was being used to transport drugs.[1] The two detectives were located near the Dobbs house portion of the footpath and others were stationed at the end of the footpath by Sullivan Street.

During the execution of the search warrant, Detective Hyatt observed Anderson and a woman halfway down the footpath walking toward Sullivan Street away from Dobbs Street. Detective Hyatt and Detective Rhinehart were stationed behind Anderson and began walking towards him. When Anderson saw the officers at the Sullivan end of the footpath, he turned around and observed the other two detectives. Anderson and the woman then "veered to the right in a quick

---

[1] Because of safety concerns, Greenville Police SWAT used a distraction device at the time they executed the warrant.

manner" off the footpath.

Detective Hyatt drew his weapon and ran towards Anderson advising him to stop and get on the ground. Anderson immediately complied and was handcuffed. When Anderson stood up again, Detective Hyatt completed a pat-down of Anderson's outer clothing for safety reasons. In Anderson's front right pocket, Detective Hyatt felt a plastic bag and hard objects, which later tested positive for crack cocaine.

Anderson moved to suppress the crack cocaine found in his pocket on two grounds. First, he alleged the drugs were not found as part of a *Terry*[2] stop, but pursuant to a warrant executed for Dobbs Street and its curtilage. Therefore, Anderson was outside the bounds of the warrant. Second, even if it was a *Terry* stop, it was improper because there was no reasonable suspicion to stop him and there was no reasonable suspicion that he was armed. Detectives Cothran, Hyatt, Rhinehart, Brown, and Gault testified at the hearing. The trial court denied the motion, relying on *State v. Taylor*, 401 S.C. 104, 113, 736 S.E.2d 663, 667 (2013), finding this was a *Terry* stop and articulable reasons were elicited from testimony to show there was reasonable suspicion to stop and complete a pat-down pursuant to *Minnesota v. Dickerson*, 508 U.S 366 (1993).[3] During the trial, Anderson renewed his objection to the introduction of the crack cocaine. The State adduced no evidence connecting Anderson or the drugs found on him to the house on Dobbs Street.

Anderson testified in his own defense. He stated he was at his aunt's house hanging out on top of her car when he heard a "big boom," and believing it was a shooting, he thought he needed to get away. As he was reacting from the "big boom," he saw the police and believed he was safe. He further testified he

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

[3] There is conflicting evidence regarding whether the detectives believed the footpath was included in the warrant. Detective Hyatt testified Detective Cothran advised him the footpath leading to Sullivan Street was part of the search warrant and told him to detain any subjects he encountered there. However, Detective Cothran testified the warrant did not include the footpath. We express concern with the inference that the officers detained Anderson under the mistaken belief it was within their authority pursuant to the warrant, and only afterwards attempted to claim it was a valid *Terry* stop; nevertheless, Anderson did not argue this issue on appeal and therefore it is not properly before us.

continued to move once he saw the police because there was a kerosene tank in his aunt's backyard and he worried if shots hit it, the tank might explode. He testified "I did not step foot in the [footpath], but I kind of moved towards the front, the front yard, so I can, you know what I'm saying, be clear of that gas jar."

The trial court ultimately found Anderson guilty as charged, and sentenced him to imprisonment for five years, suspended upon the service of ninety days with probation for forty months. Anderson appealed and the court of appeals affirmed in an unpublished opinion. *State v. Anderson*, Op. No. 2014-UP-282 (S.C. Ct. App. filed July 9, 2014). We granted certiorari.

## ISSUE PRESENTED

Is there evidence in the record to support the trial court's finding that Detective Hyatt had reasonable suspicion to make an investigatory stop?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). In reviewing a challenge under the Fourth Amendment, the Court must affirm if there is any evidence to support the ruling. *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). Accordingly, this Court reviews the trial court for clear error and will affirm if there is any evidence to support the ruling. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000).

## LAW/ANALYSIS

Anderson argues the trial court erred in failing to suppress the evidence obtained because the officer did not have reasonable suspicion that Anderson was involved in criminal activity to justify an investigative stop. We agree.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment must be excluded from trial. *Mapp v. Ohio*, 367 U.S. 643, 648 (1961). The Fourth Amendment applies to all seizures of a person, including only a brief detention. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975). Pursuant to *Terry*, a police officer with a reasonable suspicion based on articulable facts that a person is involved in criminal activity may stop, briefly detain, and question that person for

investigative purposes, without treading upon his Fourth Amendment rights. *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002). Reasonable suspicion requires a particularized and objective basis that would lead a person to suspect another of criminal activity. *United States v. Cortez*, 449 U.S. 411, 418 (1981). In determining whether reasonable suspicion exists, the totality of the circumstances must be considered. *Khingratsaiphon*, 352 S.C. at 69, 572 S.E.2d at 459. "While such a detention does not require probable cause, it does require something more than an 'inchoate and unparticularized suspicion or 'hunch.''" *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) (quoting *Terry*, 392 U.S. at 27). Therefore, in reviewing reasonable suspicion determinations, a court must look to the totality of the circumstances "to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

We find the trial court's finding of reasonable suspicion is not borne out by the record. The State offers us no more than Anderson's proximity to criminal activity and his allegedly evasive behavior. Although never dispositive, we acknowledge that being in a high crime area can be a consideration in our analysis of the totality of the circumstances. *See Sprinkle*, 106 F.3d at 617 ("Although being seen in a high crime district carries no weight standing alone, an area's disposition toward criminal activity is an articulable fact.") (internal citations omitted); *but see United States v. Perrin*, 45 F.3d 869, 873 (4th Cir. 1995) ("Were we to treat the dangerousness of the neighborhood as an independent corroborating factor, we would be, in effect, holding a suspect accountable for factors wholly outside of his control."). We likewise appreciate that evasive conduct can become a factor in adjudging reasonable suspicion. *See Taylor*, 401 S.C. at 112, 736 S.E.2d at 667 (holding evasive conduct may be considered in the totality of the circumstances analysis for reasonable suspicion because an attempted evasion may inform an officer's appraisal of an encounter).

Examining these facts within the context of Anderson's seizure, we cannot agree the evidence supports the conclusion that the officers had a particularized and objective basis to suspect illegal activity that would justify the detention. It is undisputed Anderson was in a high crime area and near the home where a search warrant was being executed. This fact carries little weight here. The police were in the area for the express purpose of executing a search warrant on a discrete property—which did not include the footpath where the officers encountered Anderson. Officers did not see Anderson flee the property involved and did not recognize him as a suspect related to those crimes. Certainly being in a high crime

area does not provide police officers carte blanche to stop any person they meet on the street. We acknowledge we are dealing with the totality of the circumstances. Nevertheless, even considering the situs with the fact that Anderson stepped off the footpath after seeing the police, we find the circumstances here fail to support the finding of reasonable suspicion.

We remain ever mindful of the difficult and often dangerous situations officers encounter daily and acknowledge that we give great deference to their experience and expertise. Here, however, the facts amount to no more than baseless conjecture that a person in a high crime area must be engaged in illicit activity. A person's proximity to criminal activity, without more, cannot establish reasonable suspicion to detain that individual. Taken to its logical conclusion, the erosion of an individual's Fourth Amendment right would necessarily accompany his or her misfortune of living in an area plagued by crime. We decline to accept such a result.

## CONCLUSION

Based on the foregoing, we reverse the court of appeals and hold the trial court erred in failing to suppress the evidence found as a result of Anderson's unconstitutional seizure.[4]

**PLEICONES, C.J., BEATTY, KITTREDGE, JJ., and Acting Justice Jean H. Toal, concur.**

---

[4] Anderson also challenges the trial court's finding that Detective Hyatt had a reasonable belief that Anderson was armed and dangerous to justify a pat-down. Because we hold that the initial seizure was unconstitutional, we need not address the subsequent search.