Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge AGEE joined. Judge THACKER wrote a dissenting opinion.
NIEMEYER, Circuit Judge:
Before dawn on May 26, 2011, Richmond, Virginia police officers pulled two bags of trash from a trash can located behind the apartment that Sierra Cox had rented from the Richmond Redevelopment and Housing Authority. The officers were looking to corroborate a tip from confidential informants that Dana Jackson was selling drugs from the apartment. .< Jackson, who was Cox’s boyfriend and the father of her children, regularly stayed at the apartment.
After recovering items from the bags that were consistent with drug trafficking, the police officers obtained a warrant to search Cox’s apartment. The subsequent search uncovered evidence that ultimately led to Jackson’s convictipn for drug trafficking.
Jackson contends that the trash pull violated his Fourth Amendment rights because, as he argues, the police officers physically intruded upon a constitutionally protected area when they walked up to the trash can located near the rear patio of Cox’s apartment to remove trash. See Florida v. Jardines, — U.S. ——, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013) (holding that officers conduct a Fourth Amendment search when they make an unlicensed physical intrusion into a home’s curtilage to gather information). Jackson also argues that the officers violated his reasonable expectation of privacy in the contents of the trash can, relying primarily on the fact that the trash can was not waiting for collection on the curb- of a public street, as was the case in California v.. Greenwood, 486 U.S. 35, 41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (holding that there' was no reasonable “expectation of privacy in trash left for collection in an area accessible to the public”).
■ We reject both arguments. The district court found as fact that at the timé of the trash pull, the trash can was sitting on common property of the apartment complex, rather than next to the apartment’s rear door, and we conclude that this finding was not clearly erroneous. We also hold that in this location, the trash can was situated and the trash pull was accomplished beyond the apartment’s curtilage. *370 We conclude further that in .the circumstances of this case, Jackson also lacked a reasonable expectation of privacy in the trash can’s contents. Accordingly, we affirm the district court’s conclusion that the trash pull did not violate Jackson’s Fourth Amendment rights.
. I
After Richmond police received information from confidential informants that Dana Jackson was dealing narcotics from the rear of 2024 Anniston Street, two officers conducted a trash pull from the trash can located behind the apartment at about 4:00 a.m. on the morning of May 26, 2011, recovering two bags of trash. The two-story apartment was located in Whitcomb Court, a public housing apartment complex owned by the Richmond Redevelopment and Housing Authority, and was one of six row-house type units in a building that faced Anniston Street. The rear of the building faced a grass courtyard separating it from another similar building. Each apartment in Whitcomb Court had a 10-foot by 20-foot concrete patio outside the back door. The patios were connected to a common sidewalk that ran the length of the building. Between each patio and the common sidewalk was a grass strip, about two to three feet wide. On each patio were two poles for laundry lines — one near the back door of the apartment and one at the far side of the patio away from the apartment. The common sidewalk running the length of the building led to the sidewalk on Magnolia Street, a side street.
The courtyard between the buildings served as a common area for the- persons leasing the units and their visitors. Residents in the buildings described the courtyard as a quiet and peaceful area where children could play and neighbors could congregate. Each building was marked with “No Trespassing” signs, although other residents of the Whitcomb Court complex frequently passed through the courtyard as well as their guests and other visitors.
After-inspecting the trash bags at the police station, the Richmond police found items consistent with drug trafficking, including 32 clear plastic sandwich bags with the corners missing and several baggie corners containing a residue. Based on the contents of the trash bags, the police obtained a warrant to search 2024 Anni-ston Street, where they recovered firearms, cocaine base, cocaine hydrochloride, a digital scale, several razor blades, and $1,557 in cash.
That apartment was leased by the Richmond Redevelopment and Housing Authority to Sierra Cox, who had lived there for several years with her children. Dana Jackson, her boyfriend and the father of her children, routinely stayed in the apartment. At the time of the search, both Cox and Jackson were in the apartment with their children, and Cox authorized the forced entry into a safe where much of the evidence of drug activity was found. The police then arrested both Jackson and Cox.
After Jackson was indicted, he filed a motion to suppress the evidence seized during the search of the apartment, contending that the trash pull, which led to the search, was an unconstitutional search and seizure. At the suppression hearing, the- evidence showed that the trash at Whitcomb Court was picked up on Thursday mornings and that, for trash collection, the residents in the building that included 2024 Anniston Street generally rolled their trash cans down the common sidewalk to the sidewalk on Magnolia Street. Richmond Police Officers Michael Verbena and Eric Fitzpatrick testified, however, that at about 4:00 a.m. on Thursday, May 26, 2011, they found the trash can for 2024 Anniston Street located behind the unit and beyond *371 the patio, sitting partially on .the two-to-three foot grass strip and partially on the common sidewalk. The officers stated that they stood in the grassy area between the patio- and the sidewalk and that one officer held the lid up while the other reached in and grabbed two plastic trash bags, each tied with a knot. They explained that they “never had to step onto [the] patio to grab [the] trash.”
Cox testified that because her trash can had been stolen from her patio previously, she normally locked it to the laundry pole on the patio that was close to the rear door of her apartment. Before collection, however, she unlocked the trash, can from the pole -to take it out for collection. She stated that at the time of the officers’ trash pull, she did not know where the trash can was or whether it had been unlocked.
Cox also acknowledged that she did not use her trash can for storage but rather for disposal of trash — “stuff [she] want[ed] to get rid of ... stuff ... [she] d[i]dn’t want anymore.”
In denying Jackson’s motion to suppress the evidence seized from the apartment, the' district court found as a fact that the “trashcan was located immediately adjacent to the sidewalk, with a portion of the trashcan protruding onto the sidewalk” and with the remaining portion sitting on the strip of grass between the sidewalk and the patio. The court further held that this location was outside of the apartment’s curtilage, noting that “the area beyond the concrete patio [was], part of the common area within the Whitcomb Court apartment complex, rather than part of the defendant’s leased property.” :
‘ As to any expectation of privacy, the court concluded that Jackson “did not have ' a subjective expectation of privacy in the trash at the time.it was searched by the officers,” reasoning that Jackson had not ’adequately shown an intent to keep the contents of the trash can private. . The court also concluded that even if Jackson had a subjective expectation of privacy, it was not an objectively reasonable one, relying on the Supreme Court’s holding in California v. Greenwood, 486 U.S. 35, 41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), that there can be no reasonable “expectation of privacy in trash left for collection in an area accessible to the public.” Rejecting Jackson’s effort to distinguish Greenwood, the court noted “that the fact that neither the defendant -nor Cox had pulled the trashcan around to the curb [on Magnolia Street] for third-party disposal [was] not dispositive,” explaining that what mattered was whether Cox and Jackson had exposed their garbage to the public. The court concluded that they had- done so by “placing the trashcan adjacent to the-sidewalk” so that it was “readily accessible to neighbors and other visitors in the apartment complex,” thereby “relinquishing any objectively reasonable expectation of privacy.”
After the district court denied Jackson’s motion to suppress, Jackson pleaded guilty to [1] drug trafficking, in violation of 21 U.S.C. § 841, reserving his right to appeal the district court’s order denying his motion to suppress. The court sentenced him to 137 months’ imprisonment.
Jackson filed this appeal, raising the issue of whether the trash pull violated his rights under the Fourth Amendment.
II
Jackson mounts a multifaceted challenge to the district court’s ruling, beginning with the argument that the court’s factual finding regarding the location of the trash can was clearly erroneous. He then argues that even if we were to accept the district court’s factual finding about where *372 the trash can was located at the time of the trash pull, we should nonetheless find the search unconstitutional under the Supreme Court’s recent decision in Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). He explains, in this regard, that “the search of [his] trash can involved police officers trawling for evidence on and around [his] back porch, an area immediately surrounding his residence and protected under Jardines from police intrusion that is not explicitly or implicitly permitted by, the resident.” (Internal quotation marks omitted). Finally, he contends that he had a reasonable expectation of privacy in the trash can and its contents because it “was directly behind the residence, was not left out for collection, and was in a ‘no trespassing’ area.” As such, he maintains, his case “is clearly distinguishable from Greenwood,” which held that the Fourth Amendment does not prohibit “the warrantless search and seizure of garbage left for collection outside the curtilage of a home.” Greenwood, 486 U.S. at 37, 108 S.Ct. 1625.
The government contends that “the record fully supports the district court’s finding as to the trash can’s location.” It also maintains that the district court correctly held that the trash can’s location was outside the apartment’s curtilage and that, because the officers did not enter the cur-tilage, Jardines is inapplicable. Moreover, the government asserts, “by placing his trash adjacent to a publicly accessible sidewalk, off his property, defendant most assuredly forfeited any expectation of privacy that society would accept as objectively reasonable.”
These conflicting contentions thus present us with three related issues: (1) whether the district court clearly erred in its factual finding regarding the trash can’s location; (2) whether that location was within the apartment’s curtilage, so that the officers’ actions amounted to an impermissible “unlicensed physical intrusion” of a “constitutionally protected area,” Jardines, 133 S.Ct. at 1415; and (3) if not, whether Jackson nonetheless had a reasonable expectation of privacy in the trash can’s contents.
A
Jackson’s challenge to the district court’s factual finding regarding the trash can’s location at the time of the trash pull requires a showing of clear error. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Clear error is demonstrated, even if there is evidence to support the finding of fact, when the reviewing court, considering all of the evidence, “is left with the definite and firm conviction that a mistake has been committed.” United States v. Breza, 308 F.3d 430, 433 (4th Cir.2002) (internal quotation marks omitted).
In this case, the Richmond police officers gave specific testimony regarding where they found the trash can in the early morning hours of May 26, 2011, and — as the district court emphasized— none of Jackson’s witnesses could provide direct evidence to contradict their testimony. They could only speak to where Cox normally kept her trash can. In light of this discrepancy in the specificity of the witnesses’ testimony, combined with the district court’s unique ability to evaluate the credibility of witnesses, we simply cannot conclude that the district court clearly erred in finding that “the trashcan was located immediately adjacent to the sidewalk, with a portion of the trashcan protruding onto the sidewalk” while the rest of the can sat on the “two or three foot wide strip of grass” between the common sidewalk and the residence’s patio.
*373 B
With this factual finding affirmed, we turn to a de novo review of the district court’s conclusion that the officers’ actions did not involve an unlicensed physical intrusion of a constitutionally protected area so as to constitute- an illegal search or seizure under the Fourth Amendment.
The Fourth Amendment, of course, provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const, amend. IV. The Supreme Court has recently emphasized that this text “establishes a simple baseline” — namely, “[w]hen the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred.” jardines, 133 S.Ct. at 1414 (citing United States v. Jones, — U.S. -, 132 S.Ct. 945, 950-51, 950 n. 3, 181 L.Ed.2d 911 (2012)) (internal quotation marks omitted). Applying this “traditional property-based understanding of the Fourth Amendment,” id. at 1417, the Jardines Court held that “using a drug-sniffing dog on a homeowner’s porch to investigate the contents of the home is a ‘search’ within the meaning of the Fourth Amendment,” id. at 1413. The Court explained that by going onto the home’s front porch, the officers had undoubtedly entered the home’s curti-lage — that is, the “area immediately surrounding and associated with the home” that is treated “as part of the home itself for Fourth Amendment purposes.” Id. at 1414 (internal quotation marks omitted). And because “the officers’ investigation took place in a * constitutionally protected area,” it was a search implicating the Fourth Amendment unless the officers had license, either explicit or implicit, to gather information there. Id. at 1415. The Court concluded that the officers lacked such permission because “the background social norms that invite a visitor to the front door do not invite him there to conduct a search.” Id. at 1416.
Under Jardines, if Richmond Police Officers Verbena and Fitzpatrick breached the curtilage of Cox’s apartment when they conducted the trash pull, it would be fairly clear that their actions in opening the trash can’s lid and taking the two trash bags would implicate the protections of the Fourth Amendment. For surely if bringing a drug-sniffing dog onto a home’s front porch is beyond the scope of the implied license that invites a visitor to the front door, so too is rummaging through a trash can located within the home’s curtilage.
In this case, the parties agree that the curtilage of Cox’s residence included the concrete patio behind her apartment. They dispute, however, whether the area immediately beyond the patio, including the two-to-three-foot strip of grass between the patio and the common sidewalk, as well as the sidewalk itself, was part of the curtilage.
The test used .to determine the boundaries of a.home’s curtilage is not “a finely tuned formula that, when mechanically applied, yields a ‘correct’ answer to all extent-of-purtilage questions.” United States, v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). In Dunn, the Supreme Court instructed “that curtilage questions should be resolved with particular reference to four factors: [1] the proximity of the area claimed to be curtilage ;to the home, [2] whether the area is included within an enclosure surrounding •the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.” Id. At the same time, though, the Court *374 cautioned that “these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration — whether the area in question is so intimately tied to the home itself that it should be placed under the home’s ‘umbrella’ of Fourth Amendment protection.” Id.; see also Oliver v. United States, 466 U.S. 170, 182 n. 12, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (describing the “conception defining the curtilage ... as the area around the home to which the activity of home life extends”).
Application of the four Dunn factors points predominantly to the conclusion reached by the district court in this case— “that the trashcan was situated outside of the curtilage of the residence ... at 4:00 a.m. on May 26, 2011.” First, with respect to proximity, the strip of grass on which the trash can partially sat (and on which the officers stood) was beyond the end of the patio and therefore at least 20 feet from the apartment’s back door. Although a 20-foot distance is not great, in the context of an apartment complex with multiple units sharing a common area, the 20-foot distance is not so close as to require the conclusion that the curtilage extended that far. See Breza, 308 F.3d at 435-36. As to the second and fourth factors, the area was not “included within an enclosure surrounding the home,” nor did Cox and Jackson take any steps to shield the area from view of people passing by. What is most telling, however, is the third Dunn factor — the use to which the area claimed to be curtilage was put. The evidence indicates that the courtyard between the apartment buildings was a common area used by all residents in the apartment complex. The common courtyard area was a grassed area that had common sidewalks running through it, by which residents could walk to other apartments and to Magnolia Street. The two-to-three foot strip of grass between the patio and the sidewalk was part of this common area, and the line between the patio and the grass marked the boundary between the particular property conveyed by lease to each tenant and the apartment complex’s common property. In these circumstances, then, we conclude that the apartment’s curtilage extended to the end of its back patio but not further, because the area beyond the patio, including the two-to-three feet between the patio and the common sidewalk, was not “so intimately tied to the home itself that it should be placed under the home’s ‘umbrella’ of Fourth Amendment protection.” Dunn, 480 U.S. at 301, 107 S.Ct. 1134.
Accordingly, we affirm the district court’s conclusion that the officers here pulled the trash bags from a trash can located outside the apartment’s curtilage. Because they did not physically intrude upon a constitutionally protected area, we conclude that Jackson cannot prevail under the property-based approach to the Fourth Amendment articulated in Jar-dines.
C
The Jardines analysis, does not end the Fourth Amendment inquiry, however, because, as Jardines itself makes clear, “property rights are not the sole measure of Fourth Amendment violations” and “[t]he Katz reasonable-expectations test has been added to ... the traditional property-based understanding of the Fourth Amendment.” Jardines, 133 S.Ct. at 1414, 1417 (referring to Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)) (internal quotation marks omitted). We therefore also address whether Jackson had a reasonable expectation of privacy in the trash can’s contents.
*375 The Supreme Court confronted a very similar set of facts in Greemuood, where it held that the Fourth Amendment does not prohibit “the warrantless search and seizure of garbage left for collection outside the curtilage of a home.” 486 U.S. at 37, 108 S.Ct. 1625. There, an enterprising police officer had “asked the neighborhood’s regular trash collector to pick up the plastic garbage bags that Greenwood had left on the curb in front of his house and to turn the bags over to her . without mixing their contents .with garbage from other houses.” Id. In holding that practice lawful, the Supreme Court accepted the fact that the defendants likely “did not expect that the contents of their garbage bags would become known to the police or other members of the public” but nonetheless concluded that the defendants had “exposed their, garbage to the public sufficiently to defeat their claim to Fourth Amendment protection.” Id. at 39-40, 108 S.Ct. 1625.
We conclude that Greenwood’s rule controls here. To be sure, there are some factual differences, key among them being that Greenwood’s trash had been left on the curb of a public street for collection, whereas Jackson and Cox had not yet taken their trash can to Magnolia Street, where the garbage collector regularly collected it. But the critical inquiry driving the Court’s decision in Greenwood was the extent to which the defendants had “exposed their garbage to the public,” thus eliminating any “reasonable expectation of privacy in the inculpatory items that they discarded.” Id. at 40-41, 108 S.Ct. 1625. By that measure, Jackson’s claim to Fourth Amendment protection for the trash can fails. For rather than being locked to the laundry pole closest to the residence’s back door, where it was normally located, the trash can was sitting in the common area of the apartment complex courtyard, which included the grass areas and common sidewalks, readily accessible to all who passed by. Moreover, as Cox testified, the trash can contained “stuff [she] wantfed] to get rid of,” stuff she “d[i]dn’t want anymore.” Put simply, having left the trash can outside the curti-lage of their home, in a common area shared by the other residents of the apartment complex and their guests, Jackson cannot now claim to have had a reasonable expectation of privacy in its contents. As in Greenwood, the trash can containing Jackson’s discarded refuse was “readily accessible to animals, children, scavengers, snoops, and other members of the public.” Id. at 40,108 S.Ct. 1625.
For these reasons, we conclude that the trash pull that the Richmond Police conducted on May 26, 2011, was a lawful investigatory procedure and accordingly affirm the district court’s order denying Jackson’s motion to suppress. Jackson’s judgment of conviction is accordingly

AFFIRMED.

. Citations to the "J.A.” refer to the Joint Appendix filed by the parties in this appeal. Additionally, for ease of reference, the photographs contained in Exhibits 1, 2, 4, 11, 12 and 13 are appended hereto.
Exhibit 1 portrays an aerial view of the .two buildings at issue, and is appended to this opinion to assist the reader. The funnel-like opening at the access point to the internal courtyard is indicated by the convergence of the two buildings in the top right quadrant of the photograph, although the fence and part of the internal walkway is obscured by trees. That area is more accurately depicted by the photographs appended in Exhibits 11 and 12.