**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Appellant,

v.

Jonathan C. Dawkins, Respondent.

Appellate Case No. 2023-000274

———————

Appeal From Newberry County
Frank R. Addy, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-058
Heard December 10, 2025 – Filed February 11, 2026

———————

**AFFIRMED**

———————

Attorney General Alan McCrory Wilson, Senior Assistant Attorney General Mark Reynolds Farthing, and Assistant Attorney General Ambree Michele Muller, all of Columbia, for Appellant.

Senior Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Respondent.

———————

**PER CURIAM:** The State appeals an order on a pretrial motion to suppress evidence. The circuit court found the evidence was seized during an unlawful "*Terry* frisk." The State argues that even if the search exceeded what is permitted by *Terry*

*v. Ohio*, 392 U.S. 1 (1968), the search can be justified as a lawful search incident to arrest.

Though some of the language in the circuit court's oral ruling supports the State's argument, we respectfully reject it for two reasons. First, despite the circuit court's comment that the officers "had the right" to arrest Respondent and "could have done so," we do not see an objective basis supporting probable cause for an arrest. Much of the evidence for probable cause depended on the credibility of the officers, and two circuit court judges had serious questions about credibility. Second, the State has not consistently identified the offense (or offenses) for which Respondent supposedly could have been arrested. We will discuss these reasons in more detail below.

The State argues the circuit court erred in evaluating the credibility of officer testimony rather than analyzing whether there was an objective basis to substantiate probable cause. In support of that argument, the State relies on cases holding an officer's subjective beliefs are irrelevant and that a search must be upheld if an officer had probable cause to make an arrest. *See State v. Moultrie*, 316 S.C. 547, 551, 451 S.E.2d 34, 37 (Ct. App. 1994) ("The fact that an arresting officer improperly based a search of an individual on a *Terry*-stop rationale does not prevent the State from otherwise justifying the search by proving probable cause to make a warrantless arrest of the individual existed prior to the search."); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining an officer's subjective intent "is irrelevant to the existence of probable cause"). "But those cases merely hold that a stop or search *that is objectively reasonable* is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason." *Florida v. Jardines*, 569 U.S. 1, 10 (2013).

In *Moultrie*, this court explained that "probable cause for a warrantless arrest generally exists 'where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested.'" 316 S.C. at 552, 451 S.E.2d at 37 (quoting *United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991)). There was no serious dispute about probable cause in *Moultrie* because when deputies arrived on the scene, there was "a crowd of people surrounding Moultrie, a package of marijuana at Moultrie's feet, and a paper bag filled with cocaine, crack cocaine, and marijuana at the edge of the woods, exactly where [the informant] had told the deputies Moultrie stored his inventory of drugs." *Id.* at 552–53, 451 S.E.2d at 38. This court affirmed because "[t]h[o]se facts, when viewed under the totality of circumstances, were sufficient for a reasonable person to believe that Moultrie had

been, or was currently, conducting drug transactions in front of his house." *Id.* at 553, 451 S.E.2d at 38.

Conversely, in *State v. Bash*, the circuit court suppressed the fruits of a search finding the officers "roll[ed] up in the backyard solely to search for drugs. And there's no reasonable interpretation of the officers' testimony other than . . . [t]hey were there to see if they could find any [drugs]." 419 S.C. 263, 273, 797 S.E.2d 721, 726 (2017). Our supreme court agreed because "the totality of the circumstances surrounding the officers' entry into the grassy area objectively demonstrate[d] their purpose was to conduct a search of the grassy area . . . ." *Id.* at 274, 797 S.E.2d at 727.

We do not see abundant probable cause in this record like there was in *Moultrie*. Respondent was unarmed when the officers approached him and they acknowledged that Respondent was "minding his own business." The officers testified their suspicion only arose after Respondent stated he believed he was going to be searched—an assertion later characterized as "giving himself away." The body camera videos show that there was no pat down of Respondent's clothes for weapons as *Terry* allows. *See Terry*, 392 U.S. at 24, 28–29 (permitting an officer to conduct a protective pat-down search for weapons when the "officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others"). Instead, the officers reached directly into Respondent's pockets as if looking for contraband. *See Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993) (finding an officer may seize contraband during a *Terry* frisk only "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent"); *see also id.* at 378 (agreeing with the Minnesota supreme court's conclusion that the challenged evidence was inadmissible because the officer only determined the object was contraband after "manipulating the contents of the defendant's pocket"). We cannot say the circuit court erred in viewing this as a case where the officer's justification followed—rather than preceded—the search itself.

The State has not consistently or definitively identified a justification or offense providing probable cause to arrest Respondent. At the first suppression hearing, the officers initially testified that this was a *Terry* frisk. As the hearing evolved, the solicitor attempted to guide them towards it being a search incident to arrest for unidentified violations of the local municipal code. During oral argument at this court, the State asserted officers had probable cause to arrest Respondent for a litany of offenses including third degree assault and battery.

We cannot consider new arguments that were not presented below. *See State v. Passmore*, 363 S.C. 568, 583, 611 S.E.2d 273, 281 (Ct. App. 2005) ("The general rule of issue preservation states that if an issue was not raised and ruled upon below, it will not be considered for the first time on appeal."). As for the argument that the officers had probable cause to arrest Respondent for public intoxication, we interpret the circuit court's ruling as rejecting this because the court appears to have been deeply troubled, and understandably so, by the fact that the officers' testimony was directly contradicted by the body camera videos of what actually occurred. The standard of review requires us to defer to the circuit court. *See Laughon v. O'Braitis*, 360 S.C. 520, 524–25, 602 S.E.2d 108, 110 (Ct. App. 2004) (explaining appellate courts defer to credibility determinations because the circuit court "was in a better position to assess the credibility of the witnesses"). The argument that Respondent exhibited signs of public intoxication turns on the credibility of the officers' testimony. The mere fact that Respondent had a bottle of vodka in his back pocket, standing alone, does not objectively establish probable cause sufficient to justify a search incident to arrest.

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**